CANTERBURY, Appellant, vs. THE BANK OF SPARTA, Respondent.

September 9 — September 26, 1895.

*Negotiable instruments: Drafts: Delivery: Withdrawal from mail: Banks and banking.*

A draft was sent by the payee, a La Crosse bank, to a bank at Sparta for collection. The Sparta bank, at the request of the drawee and

Canterbury vs. The Bank of Sparta.

on the faith of his solvency, gave him credit for the amount, made its own draft on a Chicago bank payable to the La Crosse bank, and mailed it to the latter "in payment of" the draft first mentioned. *Held*, that this was a delivery of the Chicago draft by the drawee in the first draft, through the Sparta bank, to the La Crosse bank, the payee, and that the Sparta bank could not, on learning of said drawee's insolvency, stop payment of the Chicago draft or withdraw it from the mail.

APPEAL from a judgment of the circuit court for Monroe county: A. W. NEWMAN, Circuit Judge. *Reversed.*

On January 6, 1892, W. E. Coats & Co., of Sparta, were indebted to the plaintiff, *James B. Canterbury*, of La Crosse, in the sum of $2,250 or thereabouts. On that day the plaintiff made his draft, of which the following is a copy: "La Crosse, Wis., Jan. 6, 1892. Pay to the order of State Bank, $700.70 Seven Hundred and 70-100 Dollars, with exchange, value received, and charge to the account of *James B. Canterbury*. To W. E. Coats & Co., Sparta, Wis." Thereupon the plaintiff discounted that draft at the State Bank of La Crosse, and that bank indorsed thereon, "Pay *Bank of Sparta* or order for collection account of State Bank of La Crosse," and thereupon sent the draft by letter to the defendant. The draft was received by the defendant in the forenoon of January 7, 1892. W. E. Coats & Co. then had an account with the defendant bank, which was then overdrawn. W. E. Coats & Co. then accepted the draft, and requested the defendant to pay the same. The defendant then made its draft on the Atlas National Bank of Chicago, in favor of J. M. Holley, cashier of the State Bank of La Crosse, for $700.70, and inclosed the same in a letter, of which the following is a copy: "Sparta, Wis., Jan. 7, 1892. J. M. Holley, Esq., La Crosse, Wis.— Dear Sir: Your favor of the 6th is received, with the stated inclosures. I inclose our draft on Chicago for $700.70 *in payment of draft on W. E. Coats & Co.* Respectfully yours, E. H. CANFIELD, Cashier," — and

posted the same about half-past 4 o'clock in the afternoon of January 7, 1892, and entered the plaintiff's draft as paid on the books of the defendant. The defendant, having ascertained that W. E. Coats & Co. had failed, attempted to get the letter containing the draft back out of the postoffice, but found it had gone to La Crosse. By telephoning the defendant succeeded in getting the letter and draft out of the postoffice at La Crosse, and the next morning destroyed the draft and the letter, and erased all entries respecting the payment of the draft in defendant's books, and protested the plaintiff's draft for nonpayment, and returned it to the State Bank of La Crosse, and that bank thereupon assigned to the plaintiff its cause of action against the defendant by reason of the facts stated.

Upon these facts the plaintiff brings this action to recover the value of the draft so taken from the postoffice. At the close of the testimony the court directed a verdict in favor of plaintiff and against the defendant for the amount of that draft and interest. Upon a motion for a new trial the court directed judgment in favor of the defendant, notwithstanding the verdict. From such judgment, entered accordingly, the plaintiff appeals.

For the appellant there was a brief by *Winter, Esch & Winter,* and oral argument by *Frank Winter.* They argued, among other things, that there was a delivery of the draft to the State Bank beyond the power of the defendant to recall. *Johnson v. Sharp,* 31 Ohio St. 611, 618; *McKinney v. Rhodes,* 5 Watts, 343; 1 Randolph, Comm. Paper, § 218 and cases cited; Tiedeman, Comm. Paper, § 34a; *U. S. v. Jackson,* 29 Fed. Rep. 503; *U. S. v. Jones,* 31 id. 725; *Williams v. Galt,* 95 Ill. 172. Coats & Co., the purchasers of the draft, ordered it sent to the State Bank, and there was to be no other delivery to them than there actually was. If Coats & Co. had purchased merchandise of the defendant on credit and ordered the defendant to forward to the State Bank,

after the delivery to the postoffice or to a common carrier for conveyance there would have been no right of stoppage *in transitu.* 1 Parsons, Cont. 606 and note *n; Rowley v. Bigelow,* 12 Pick. 307, 313; *Stubbs v. Lund,* 7 Mass. 453, 456; *Treadwell v. Aydlett,* 9 Heisk. 388; *Gwyn v. R. & D. R. Co.* 85 N. C. 429; *Eaton v. Cook,* 32 Vt. 58.

For the respondent there was a brief by *Morrow & Masters,* and oral argument by *J. M. Morrow.* They cited, as to the right of stoppage *in transitu,* 2 Kent, Comm. 542, 543; 1 Parsons, Cont. (6th ed.), 600; *Muller v. Pondir,* 55 N. Y. 325; 5 Wait, Act. & Def. 612; *Wiseman v. Vanderputt,* 2 Vern. 203; *Smith v. Bowles,* 2 Esp. 578.

CASSODAY, C. J. It may be conceded that the vendor of negotiable paper has the right of stoppage *in transitu* to the same extent as the vendor of other species of personal property. Here the La Crosse bank discounted the plaintiff's draft on W. E. Coats & Co., and forwarded the same to the defendant for collection. The defendant was under no obligation to pay that draft,— especially as the account of W. E. Coats & Co. at the defendant bank was then considerably overdrawn. Nevertheless, the defendant, on the request of the managing agent of W. E. Coats & Co., whose authority is not questioned, made its own draft on the Chicago bank for the amount, payable to the cashier of the La Crosse bank, and sent the same in a letter by mail to the cashier of the La Crosse bank " in payment of draft on W. E. Coats & Co.," and that letter, with the draft inclosed, reached La Crosse in the regular course of mail. Undoubtedly, the defendant, in making its draft on the Chicago bank, gave a corresponding credit to W. E. Coats & Co. on the faith of their solvency; but it did so voluntarily and for their accommodation and without being induced to do so by any fraud or mistake of fact. While the defendant retained the actual or constructive possession of that draft, it could, un-

doubtedly, withhold its application in payment of the draft on W. E. Coats & Co.; but if, by sending the draft by mail to La Crosse, it parted with such possession and vested the title to the draft in the La Crosse bank, then, manifestly, it lost all rightful authority to take the same from the mail. In thus mailing and sending the draft the defendant acted as the agent of the La Crosse bank. Such mailing of the letter inclosing the draft was, in legal effect, a delivery of the draft to the La Crosse bank. 1 Randolph, Comm. Paper, § 218; 1 Daniel, Neg. Inst. § 67; *Buell v. Chapin*, 99 Mass. 594; *Kirkman v. Bank of Am.* 2 Coldw. 397; *Mitchell v. Byrne*, 6 Rich. Law, 171: *Sichel v. Borch*, 2 Hurl. & C. 956; *Funk v. Lawson*, 12 Ill. App. 229. The mere fact that after the draft was so sent by mail the defendant ascertained that W. E. Coats & Co. had failed, and hence that it had injudiciously given them further credit to the amount of the draft, did not authorize the defendant to stop payment of the draft or take it from the mail. The draft was not transmitted to W. E. Coats & Co., but was transmitted by them, through the defendant, to the bank at La Crosse.

In support of the views expressed, see *Boylston Nat. Bank v. Richardson*, 101 Mass. 287; *Pacific Bank v. Mitchell*, 9 Met. 297; *Pratt v. Foote*, 9 N. Y. 463; *Whiting v. City Bank*, 77 N. Y. 363; *Eaton v. Cook*, 32 Vt. 58.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment against the defendant for the amount of the verdict directed in favor of the plaintiff, with interest and costs.

Newman, J., took no part.