Bank v. Bank.

FIRST NATIONAL BANK OF MURFREESBORO *v.* FIRST
NATIONAL BANK OF NASHVILLE *et al.*

*(Nashville.   December Term, 1912.)*

1. BANKS AND BANKING.   Drawee bank is not liable until
acceptance of check.

No liability attaches against the drawee bank, until it accepts the
check.   (*Post, p.* 212.)

Acts cited and construed:   Acts 1899, ch. 94, sec. 169.

Case cited and approved:   Imboden v. Perrie, 13 Lea, 506.

2. SAME.   Same.   Duty of drawee when becoming agent for
collection of check.

Where a check is remitted to the drawee bank for collection, its
duty as collecting agent, which it also becomes by such remit-
tance, is to present the check for acceptance and payment; and
its duty as drawee to the drawer is only to pay the check if
the drawer, in the absence of a special agreement, has sufficient
funds on deposit to cover it.   (*Post, pp.* 213, 215.)

Acts cited and construed:   Acts 1899, ch. 94, secs. 126, 127, 128,
185, and 189.

Cases cited and approved:   Bank v. Bank, 8 Bax., 101; Bank v.
Cummings, 89 Tenn., 610; Lowenstein v. Bresler, 109 Ala., 326;
Bank v. Bank, 78 Md., 577; Bank v. Keenan, 76 N. C., 340.

3. BILLS AND NOTES.   Checks are bills of exchange giving
drawees twenty-four hours for acceptance.

A check drawn upon funds in a distant bank is a "bill of ex-
change," within the meaning of our statute (Acts 1899, ch. 94,
sec. 136), giving the drawee of a bill twenty-four hours after
presentment in which to decide whether or not he will accept
the bill.   (*Post, pp.* 214, 215, 218.)

Acts cited and construed:   Acts 1899, ch. 94, secs. 126, 127, 136,
185, and 189.

Case cited and approved:   Bank v. Merritt, 7 Heisk., 190.

**4. BANKS AND BANKING.** What constitutes acceptance of check by drawee bank when also acting as collecting agent.

Where the drawee of a check (a bank) is acting in the dual capacity of collecting agent of the holder and as drawee, there can be no acceptance by delivery until the bills are passed through the books of the bank, charging the account of the drawer and crediting that of the remitting bank, and making a completed transaction. (*Post, pp.* 215, 216.)

Case cited and approved:   Bank v. Bank, 78 Md., 577.

**5. BILLS AND NOTES.** Essentials of acceptance by delivery, when drawee is acting also as collecting agent.

In view of the negotiable instruments law (Acts 1899, ch. 94), defining (in its general provisions preceding its first section) "acceptance" to mean "an acceptance completed by delivery or notification," where the drawee of a check is acting in the dual capacity of collecting agent of the holder and as agent of the drawer to pay, there can be no acceptance by delivery until the transaction is completed by delivery to the remitting bank in due course, or until there is notification. (*Post, pp.* 215, 216.)

Acts cited and construed:   Acts 1899, ch. 94, general provision preceding its first section.

**6. BANKS AND BANKING.** Stamping check "Paid" is not conclusive of acceptance, when; bank may discontinue custom of allowing overchecking, when.

Where the drawee bank is acting in the dual capacity of collecting agent and as drawee, the stamping of a check as "Paid," when erased, is not conclusive of acceptance; and in the absence of an agreement between the drawer and drawee for overchecking, and in the absence of the holder's knowledge of and reliance upon the existence of a customer of overchecking, the drawee is not liable to the holder, because it was entirely within the option of the drawee to discontinue such custom at any time it saw proper. (*Post, pp.* 209, 216, 217, 218, 219.)

Cases cited and distinguished:   Bank v. Burkhardt, 100 U. S., 686; Oddie v. Bank, 45 N. Y., 735.

Bank v. Bank.

7. **SAME. Drawee is not liable on checks taken by holder without promise of payment or acceptance.**

Checks taken by the holder without any promise of payment or acceptance by the drawee are without any consideration passing between them; and the holder cannot maintain an action against the drawee without acceptance, though the drawee was acting also as collecting agent of the holder. (*Post, p.* 217.)

8. **BILLS AND NOTES. Drawer's signature to check is representation of funds.**

The drawer's signature to his check is a representation by him to all subsequent holders that the drawer has sufficient funds on deposit with the drawee to pay it, and that the drawee would accept and pay the check when presented. (*Post, p.* 217.)

9. **SAME. Holder may sue drawer of check where drawee refuses payment.**

Where the drawee refused payment of a check because the drawer had no funds deposited with the drawee, the holder may sue the drawer upon the check. (*Post, pp.* 217, 218.)

10. **SAME. Acceptance of drawer's check is not payment, when.**

The acceptance of checks by the holder does not extinguish the drawer's indebtedness to him. (*Post, pp.* 218, 219.)

11. **SAME. Effect of presenting check to drawee bank where drawer has no funds.**

The presentment of a check to the drawee bank, where the drawer has no funds on deposit with which to pay it, amounts to no more than a request by the drawer for the drawee to become his accomodation indorser for the amount, which request the drawee may grant, and thus create an overdraft upon the account of the drawer; and it may refuse the request without making itself liable to the holder. (*Post, p.* 218.)

12. **SAME. Checks may, by agreement, be remitted to drawee for collection.**

Where both the holder and drawer of a check agreed with the remitting bank that remittances might be made directly to the drawee bank, they cannot complain that such was done. (*Post, pp.* 208, 209, 210, 211, 219.)

FROM RUTHERFORD.

Appeal from the Chancery Court of Rutherford County.—WALTER S. BEARDEN, Chancellor.

RIDLEY & RICHARDSON, for complainant.

JOUROLMON, WELCKER & SMITH, WALTER STOKES and W. T. SMITH, for defendants.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

The bill in this case was filed by the First National Bank of Murfreesboro to collect from the First National Bank of Sparta and the First National Bank of Nashville $15,500, the aggregate amount of four certain certain checks which the firm of W. B. Earthman & Co. drew on the First National Bank of Sparta in favor of the First National Bank of Murfreesboro in payment of certain indebtedness of Earthman & Co. to the First National Bank of Murfreesboro, and which the First National Bank of Sparta refused to pay.

It is sought to hold the Sparta Bank liable upon the theory that it accepted the checks in controversy, and marked them "Paid," intending at the time to remit the amount to the Murfreesboro Bank and charge the account of Earthman & Co. with a like sum. It is sought to hold the Nashville Bank liable upon the theory that it, as the remitting agent of the Murfrees-

Bank v. Bank.

boro Bank, was negligent in selecting the Sparta Bank to present the checks for payment, because the Sparta Bank was the drawee.

The checks were drawn October 29, 1907, and on that day were delivered to the Murfreesboro Bank, and by it they were placed to the credit of Earthman & Co., and forwarded the same day to the Nashville Bank for collection. They were received by the Nashville Bank October 30th, and were credited to the account of the Murfreesboro Bank, and forwarded to the Sparta Bank for collection. They were received by the Sparta Bank October 31st, and were stamped "Paid," by that bank as of November 1, 1907. At the time the checks were received by the Sparta Bank, the drawer had no funds on deposit with that bank with which to pay the checks, and the next day, November 1, 1907, the word "Paid" was erased from the checks, and they were protested and returned to the Nashville Bank  The Nashville Bank received them November 2d, and on that day charged them back to the account of the Murfreesboro Bank, and mailed them to it. As stated, recovery is sought against the Nashville Bank because it sent the checks for collection directly to the drawee bank. Recovery is sought against the Sparta Bank upon an allegation that it accepted the checks, notwithstanding the absence of funds in its hands belonging to the drawer with which to pay them, and its subsequent action in erasing the word "Paid" from the checks and protesting and returning them to the Nashville Bank was an afterthought upon its part to relieve itself of liability.

The Murfreesboro and Nashville Banks had been corresponding for a great many years, as also had the Nashville and Sparta Banks.

W. B. Earthman, the senior member of the firm of W. B. Earthman & Co., was president of the Murfreesboro Bank, and was a man of large credit, who conducted a very large lumber business, with offices in Murfreesboro, and kept banking account in Murfreesboro, Nashville, Sparta, and various other places. He was considered by the business world as a very rich man, and had a rating by the commercial agencies of $500,000, over and above liabilities. It had been a custom of his firm for a number of years to draw checks on the Sparta Bank, deposit them to his credit at the Murfreesboro Bank, and they were transmitted to Sparta through the Nashville Bank, and presented by that bank directly to the Sparta Bank for payment.

As stated, is course of business continued over a long period of time, and the daily transactions between the various banks were very large, amounting to $15,000 to $30,000 per day. The Murfreesboro Bank knew that the Nashville Bank presented items for collection on the Sparta Bank directly to it. This is a general banking custom, and especially it is the custom of the three banks involved here.

W. B. Earthman, while president of the Murfreesboro Bank, agreed with the Nashville Bank that items drawn by him on the Sparta Bank in favor of the Murfreesboro Bank should be transmitted by the Murfreesboro Bank to the Nashville Bank, and by it di-

rectly to the Sparta Bank for collection, and that his account with the Nashville Bank might be charged with the exchange. This arrangement was made about two years before the transaction involved in this case arose, and was followed consistently and daily.

W. B. Earthman & Co. had been kiting checks through various banks for quite a period of time before their failure, October 31, 1907. On October 29th, items on Earthman & Co. came into the First National Bank of Murfreesboro in large sums, as they had been doing for some time previous. Earthman & Co. would meet these items by drawing checks on the Sparta Bank in favor of the Murfreesboro Bank. They would meet their items coming into the Sparta Bank by drawing checks and drafts upon other banks and forwarding them to the Sparta Bank. On the day that the checks in controversy were presented to the Sparta Bank, the Murfreesboro Bank refused to accept the paper offered to it by Earthman & Co. to protect their checks coming in to that bank on that day. The cashier of the Murfreesboro Bank, when he declined to accept the paper Earthman & Co. offered to the bank to protect their credit, called in certain of the directors of the bank, and, after discussing the situation, the bank declined to grant Earthman & Co. any further credit, as a result of which they failed. This occurred about two o'clock in the afternoon of October 31st.

Earthman & Co. had previously drawn three other batches of checks on the Sparta Bank, aggregating $15,500, and these checks were paid by that bank Oc-

tober 29th, 30th, and 31st. On each day that the Sparta Bank would receive checks drawn on it by Earthman & Co., they would also receive remittances from him to cover the amount. On the 31st it received the checks in controversy, and mark them "Paid" as of November 1st, expecting to receive from them remittances to cover the items later on in the same day. It is the custom of the Sparta Bank to close its books in the morning for the preceding day's business, and in this way it remitted on the 31st for $15,500 actually received on the 30th, and it was for this reason that it marked "Paid" the items in controversy as of November 1st. On November 1st, not having received remittance from Earthman & Co. to cover the checks marked "Paid" as of that day, the cancellation mark was erased, and the checks protested and returned to the Nashville Bank.

It is conceded by counsel that no liability attaches against the Sparta Bank, unless the checks were accepted by it. Shannon's Code Supp., p. 605; *Imboden* v. *Perrie,* 13 Lea, 506. It is also conceded that Earthman & Co. did not have at the time, or any time thereafter, funds on deposit with the Sparta Bank with which to pay the checks.

The argument of learned counsel for complainant is that, when the Nashville Bank selected the Sparta Bank as an agent to present the checks for payment, the Sparta Bank became the agent of the Murfreesboro Bank, although it was the drawee of the checks; and it was the duty of the Sparta Bank, as agent of com-

Bank v. Bank.

plainant, to present the checks to itself for payment, and to demand of itself an unconditional acceptacne or rejection of the items, and that it was allowed during banking hours of that day in which to decide. It is said that, when the Sparta Bank marked the checks "Paid," it did so as acceptor in response to its demand upon itself as the agent of complainant, and this acceptance is irrevocable.

The weight of authority seems to be that, when a check is remitted to the drawee from a distant point for collection, the drawee is made a collecting agent for the holder in addition to his duty to pay as drawee. In such case, the drawee's duty as collecting agent is to present the check for acceptance and payment, and his duty as drawee is owed to the drawer only, and is to pay the check if the drawer has sufficient funds on deposit to cover it. *Lowenstein* v. *Bresler,* 109 Ala., 326, 19 South., 860; *Wheeling Exchange Bank* v. *Sutton Bank,* 78 Md., 577, 28 Atl., 563, 23 L. R. A., 173; *New Hanover National Bank* v. *Keenan,* 76 N. C., 340; *Bank* v. *Cummings,* 89 Tenn., 610, 18 S. W., 115, 24 Am. St. Rep., 618; *Bank* v. *Bank,* 8 Baxt., 101, 35 Am. Rep., 691; 5 Cyc., 503. But if the drawer has not sufficient funds on deposit with the drawee to pay the check, the drawee owes no duty to him which it is bound to observe, in the absence of any agreement between them to pay the check, regardless of funds being on deposit. The relationship between the drawee and the drawer in a case like this is merely that of banker and depositor. The banker is under no obligation to pay checks of his

depositors, where there are no funds on deposit with him for that purpose, unless they have a special agreement to that effect. Hence, when the Sparta Bank received the checks in controversy at a time when it had no funds of the drawer with which to pay them, it was under no duty to accept them. However, it could hold them, as it did, for twenty-four hours before the duty of accepting or rejecting them was cast upon it. Negotiable Instruments Law (Acts 1899, ch. 94) sec. 136

The section of the Negotiable Instruments Law just cited provides that the drawee is "allowed twenty-four hours after presentment in which to decide whether or not he will accept the bill; but the acceptance, if given, dates of the day of presentation." This is said with respect to bills of exchange, which are defined to be "an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand, or at a fixed or determinable future time, a certain sum in money to order or bearer." Section 126.

Section 185 defines a check to be "a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

Sections 127, relating to bills of exchange, and 189, relating to checks, are identical with respect to the provision that neither the bill nor the check operates as an assignment in the hands of the drawee, and that the

drawer is not liable on the bill or the check, unless and until he accepts the same.

Before the enactment of our uniform Negotiable Instruments Law, it was held by this court in *Planters' Bank* v. *Merritt*, 7 Heisk., 190, that a bank check was a bill of exchange, although it was a distinctive species of commercial paper. Without undertaking in this case to differentiate between the qualities and characteristics of bills of exchange and checks, we hold that checks drawn upon funds on deposit in a distant bank are bills of exchange within the meaning of section 136 of the Negotiable Instruments Law, supra. This being determined, it necessarily follows that the bank was not guilty of negligence in not protesting the checks upon the day of their receipt by it, October 31st.

We are also of opinion that there was no acceptance of the checks under the facts of this case. "Acceptance," as defined in Negotiable Instruments Law, "means an acceptance completed by delivery or notification." There was no delivery of the checks after they were marked paid in this case. The evidence shows that the checks were marked "Paid" with a stamp provided for that purpose, and placed upon a cancellation hook, on October 31st, to be entered upon the books of the bank on November 1st, in the event remittances were received before then to cover the checks. On November 1st, remittances not being received, the check was taken from the hook and the cancellation mark erased. This was done, it is true, by the drawee as collecting agent of the holder; but it is also true that the acceptance was not completed by delivery, and, of course, there was no

notification. Where the drawee is acting in the dual capacity of collecting agent of the holder and as drawee, there can be no acceptance by delivery until the bills are passed through the books of the bank, charging the account of the drawer and crediting the account of the remitting bank, and making a completed transaction. *Exchange Bank* v. *Sutton Bank*, **supra.**

From the foregoing provisions of the Negotiable Instruments Law, we hold there can be no acceptance upon the part of the drawee, receiving remittances from a distance, and acting in the dual capacity of collecting agent of the holder and as agent of the drawer to pay, until and unless the transaction is completed by a delivery to the remitting bank in due course, or a notification to some one entitled to be notified.

It is also said in behalf of complainant that there was a custom with the Sparta Bank to permit Earthman & Co. to overdraw their account, and that, when it received the checks in controversy and marked them "Paid," it intended to accept them for credit at the Nashville Bank and to charge them to the account of Earthman & Co., and that its subsequent act in erasing the "Paid" stamp from the checks was an afterthought, to protect itself against the insolvency of Earthman & Co. However this may be, it is not material in this case, because there is no insistence that it had any agreement with Earthman & Co. for a line of credit to be extended to them, or that such custom of over-checking was known to and relied upon by the complainant when it accepted the checks of Earthman & Co. If

such a custom existed, it was entirely within the option of the defendant to withdraw it at any time it saw proper.

These facts distinguish this case from *Oddie* v. *Bank,* 45 N. Y., 735, 6 Am. Rep., 160, and *First National Bank* v. *Burkhardt,* 100 U. S., 686, 25 L. Ed., 766. In those cases the items of credit tendered to the banks were accepted, either directly or by the silence of the bank, and under such circumstances as the court found that there was an acceptance.

The checks were taken by the complainant without any promise of payment or acceptance upon the part of the defendant, and, therefore, without any consideration passing between them. It could maintain no action against the Sparta Bank upon the checks without an acceptance by the latter.

The Sparta Bank is not a party to the original contract between the complainant and Earthman & Co. The checks were merely orders addressed to the Sparta Bank, and signed by Earthman & Co. for the payment of money to be made by the Sparta Bank. The drawee was not bound by the contract until after presentment and acceptance. It is true that the signature of Earthman & Co. to the checks was a representation by them to all subsequent holders of the checks that they had sufficient funds on deposit with the drawee to pay them, and that the drawee would accept the checks when presented, and pay them. When this representation proved to be false, in that the drawer had no funds with the drawee, and the drawee refused payment, the holder

acquired a right to sue the drawer upon the check. The refusal of the drawee to accept and pay the checks wrought no injury to the holder. The acceptance of the checks by the holder did not extinguish the indebtedness of the drawer to it. It is in precisely the same plight it was before the checks were drawn. The presentment of the checks to the Sparta Bank, when the drawer had no funds on deposit with which to pay them, could amount to no more than a request by the drawer for it to become his accommodation indorser for the amount. The defendant could have done this, of course, and created an overdraft upon the account of the drawer; and, manifestly, it could likewise decline to advance the money to the drawer without making itself liable to the holder in any sense. So, also, could it receive the checks and hold them for twenty-four hours, intending to accept and pay them if the drawer should forward sufficient funds to cover them. Its previous course of business with the drawer justified an expectation upon the part of the drawee that funds would be received to cover the checks. Its holding the checks until the next day was for the accommodation of the drawer and the holder.

Again, its custom was to enter upon its records of the next day's business transactions of the preceding day. If it had protested the checks immediately upon receipt of them, the situation would not have been altered. Hence, we conclude that the Sparta Bank is not liable for its failure to pay the checks in controversy, either because it marked them "Paid" as of No

Bank v. Bank.

vember 1st, or because it did not protest them October 31st.   There was no acceptance of the checks, because the drawee did not intend to accept and pay them unless sufficient funds were remitted to warrant it in doing so, and because the cancellation of the checks was not communicated to the holder or its agent until after they were protested.

Earthman & Co.'s account was not charged with the checks, and the Nashville Bank's account was not credited with them.   There was nothing done in the case, except to prepare the checks for entry upon the books as of the next day, in anticipation of a remittance from the drawer to cover them.

Nor do we think that the Nashville Bank is liable for not selecting a proper agent to make the collection at Sparta.   It is shown in the proof that both the holder and the drawer of these checks agreed with the Nashville Bank that remittances might be made directly to the drawee, and they, of course, cannot now complain that such was done.

Affirmed.