## CHAPMAN v. MILLS & GIBB.

### In re MERCHANTS' NAT. BANK OF PROVIDENCE, R. I.

(District Court, S. D. New York. February 2, 1917.)

1. BANKS AND BANKING ⬤�439134(1)—DEPOSITS FOR COLLECTION—RIGHTS OF BANK.

A corporation having a deposit in a bank which held its overdue notes for an amount exceeding the deposit, indorsed checks payable to it, and mailed them to the bank with intent that they should be collected and credited to its account. Subsequently a receiver for the corporation was appointed, and still later the bank with knowledge of the receivership received the checks, credited them to the corporation, subject to the right to charge them back if not paid, collected them, and credited the amount on the notes. *Held*, that as against the receivers the bank was entitled to the amount collected; the corporation having lost control of the checks before the receivership.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 353.]

2. BANKS AND BANKING ⬤�439134(1)—DEPOSITS FOR COLLECTION—RIGHTS OF BANK.

The regulations of the Post Office Department, whereby under certain circumstances the department in its discretion may return a mailed communication to the sender, did not affect the rights of the bank; the sender having intended that the mailed matter should go forward without interruption, and not having sought to recall it, but having disabled itself from recalling it.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 353.]

3. BANKS AND BANKING ⬤�439134(1)—DEPOSITS FOR COLLECTION—RIGHTS OF BANK.

That the corporation had never before deposited checks payable to it in such bank, but had made its deposits in the form of its own checks on another bank did not affect the rights of the bank, nor did the fact that it took the bank some days to collect the checks.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 353.]

Receivership suit by Henry W. Chapman against Mills & Gibb. On petition of Merchants' National Bank of Providence, R. I. Claim of the bank allowed.

The facts are set forth in a stipulation between the receivers and the bank, and it is also stipulated that the order of this court, determining the questions presented by the stipulation, shall have the same force and effect as if the same were a judgment or decree of a court of competent jurisdiction rendered in a plenary suit or action brought by the receivers against the bank to recover $5,115.64, the net amount of checks collected.

The essential facts stipulated are as follows:

At the times here concerned, Mills & Gibb was a New Jersey corporation, doing business in the city of New York, and Merchants' National Bank was a national banking corporation in Providence, R. I. The bank from time to time, for many years, had made loans to Mills & Gibb, and Mills & Gibb was accustomed to keep a deposit drawing account with the bank, and on May 12, 1916, the bank held overdue notes of Mills & Gibb in excess of the amount of the checks in question. On or about noon of May 12, 1916, Mills & Gibb indorsed to the order of the bank a number of checks drawn by various customers of and payable to the order of Mills & Gibb, and also made out a deposit slip or ticket reciting the deposit of the checks with the bank, and

⬤�439For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

placed these in an envelope, postage prepaid, properly addressed to the bank, and deposited the envelope in the mails. This indorsement was:

"Pay to the order of Merchants' National Bank, Providence, R. I.
"May 12, 1916. . Mills & Gibb."

According to the stipulation: "The said checks were forwarded by Mills & Gibb with the intention that they should be collected by the said Merchants' National Bank, and that the proceeds thereof, when collected, should be credited to the account of Mills & Gibb with said bank, and the said bank received the said checks and credited the account of Mills & Gibb with the face amount thereof, subject to the right to charge back against the account of the said Mills & Gibb any of the said checks which were not collected, and subject also to any exchange or collection charges, and the said checks were so credited by the said bank to Mills & Gibb in its account with the latter corporation." After the mailing above referred to, and later on the same day, May 12, 1916, application was made in the United States District Court for the Southern District of New York, for the appointment of receivers for Mills & Gibb, and receivers were appointed and duly qualified.

The checks above referred to were received by the bank on May 13, 1916; i. e., after the receivers were appointed. These checks were collected by the bank in the ordinary course of business, the amount collected each day being applied on overdue notes of Mills & Gibb. Ancillary receivers were not appointed in Rhode Island until May 19, 1916, on which date a petition was filed in the United States District Court for the District of Rhode Island, for their appointment, and they were appointed and duly qualified. When the bank received the checks, its officers knew that receivers had been appointed in New York.

Prior to May 12, 1916, it had been the custom of Mills & Gibb to forward to the bank, from time to time, checks to be credited to its account with the bank, but such checks, prior to May 12, 1916, had been, in each case, checks drawn by Mills & Gibb on Chemical National Bank of New York and payable to the order of Merchants' National Bank of Providence. The forwarding on May 12, 1916, of the 51 checks drawn by customers of Mills & Gibb on various banks, payable to the order of Mills & Gibb and indorsed by the latter to the order of the Merchants' National Bank of Providence, was the first instance of the forwarding by Mills & Gibb to the bank of checks of this character. The bank claims that it was entitled to offset the amount of the proceeds of collection of the checks against the indebtedness of Mills & Gibb to it upon the notes, while the receivers claim that the bank was not entitled to make the offset, but is liable to pay to the receivers the full amount of the proceeds of collection of the checks less exchange charges.

No question of fraud is involved and, as the proceeding was in equity and not in bankruptcy, no question of preferential payment arises.

Henry Root Stern, of New York City, for receivers.
William R. Dorman, of New York City, for Merchants' Nat. Bank.

MAYER, District Judge (after stating the facts as above). [1] Preliminarily it may be stated that the bank has a general lien or title to the checks by virtue of the indorsement and mailing prior to the appointment of receivers in this jurisdiction, irrespective of the physical receipt by the bank unless the appointment of receivers intermediate between the time of the physical mailing and the time of the physical receipt gave the right of possession to the receivers in New York, and that, in such case, the bank would have the right to offset the proceeds of the checks against the overdue notes of Mills & Gibb. Further, the receivers appointed in New York and the ancillary receivers appointed in Rhode Island in this equity conservation proceeding were ordinary receivers, governed by ordinary equity principles, and at the

time in question there was not any transfer of title of the assets of Mills & Gibb to the receivers, and the receivers had the right of possession upon their appointment, only to those assets of which Mills & Gibb then had title.

Various contentions are made by each party, but it is necessary to consider only the effect, in law, of the mailing of the checks prior to the appointment of receivers in the main proceeding in New York.

Many cases have been cited by counsel relating to the mailing of letters, but diligent search has failed to disclose any case which may be said to be directly in point. In criminal cases, whether here or in England, the statute, asserted to have been violated, usually sets forth, with reasonable precision, under what circumstances an offense is committed. The ultimate purpose sought to be accomplished under those statutes is the prevention of interference with the mails and the preservation of the integrity of the post office system, and therefore, cases like Regina v. Jones, 4 Cox Crim. Cases, 198, and United States v. Nutt, 27 Fed. Cas. No. 15,904, p. 206, are not of much service.

[2] Reference is made to the regulations established by the Post Office Department of the United States, whereby under certain circumstances the department, in its discretion, may decide to return a mailed communication to the sender. But such regulations, and the opinions of Attorneys General in respect thereof, are irrelevant to the question here concerned because, in this case, it is conceded that the sender intended that the transit of the mailed matter should be uninterrupted until destination was reached, and because, in point of fact, that intention was carried out and the sender did not in any manner seek to recall the mailed matter, but by its conduct disabled itself from exercising any dominion or authority over the mailed matter once that it had been placed in the custody of the Post Office Department for transmission to address of destination.

It may well be that interesting questions would arise if the sender had recalled its letter and the Post Office Department had returned the letter before it reached its intended destination. That, however, is not this case. Some of the cases cited speak of the Post Office Department as an agent, but I am inclined to think that that is rather a loose way of designating the position and function of the department in a case such as this. The department is the instrumentality whereby the mailed matter proceeded forward, but it is in a sense as inanimate as if there stretched direct from the office of Mills & Gibb to the office of the bank in Rhode Island a mailing tube, and by some pneumatic device some one in Mills & Gibb had started this letter through the tube and it had come out at the other end at the window of the receiving teller of the bank.

If this illustration of the tube is kept in mind, the question seems to become simplified, as is often the case where simple illustrations are employed. The basic question in the case is, When did Mills & Gibb lose control of these checks? and the answer is, The moment they were placed in the mail. In that connection it must be emphasized and remembered that the intention of Mills & Gibb is the controlling fact in this case. That intention was to part forever with possession of these checks, and to cause them to go forward without in-

terference by Mills & Gibb, or anybody else, until they reached their destination. In view of the stipulated facts it is a fair presumption that those checks would be accepted, but, whether a presumption arose or not, the checks were in fact accepted.

[3] I cannot see that the fact that payment was made by Mills & Gibb to this bank for the first time in this way involves the principle here considered, or in any manner affects the right of the bank, nor am I able to see how the bank is affected by the fact that it took some days to collect upon these checks. The vital point is that Mills & Gibb, by their own act and in accordance with their own intention, relinquished and lost possession of these checks about noon, May 12, 1916, and that Mills & Gibb and the receivers (in addition to any other reasons which may be advanced) for this reason never had the right, at any time after noon of May 12, 1916, to the possession of these checks. Entertaining this opinion, the claim of the bank must prevail.

I have noted below a few cases which, by analogy, may be of some service.[1]

---

[1] NOTE.—Barrett v. Dodge, 16 R. I. 740, 19 Atl. 530, 27 Am. St. Rep. 777; Trego v. Cunningham, 267 Ill. 367, 108 N. E. 350; Kirkman & Luke v. Bank of America, 2 Cold. (42 Tenn.) 397; Kennedy v. Kennedy Corporation, 32 Misc. Rep. 480, 66 N. Y. Supp. 225; Commonwealth v. Wood, 142 Mass. 462, 8 N. E. 432; Greene, Rec'r, v. Jackson Bank, 18 R. I. 779, 30 Atl. 963; Security Bank of Minn. v. N. W. Fuel Co., 58 Minn. 141, 59 N. W. 987.