## Traders' Nat. Bank *v.* First Nat. Bank.

### (*Nashville.* December Term, 1919.)

1. **BILLS AND NOTES.** Check not accepted where draft in payment was never delivered and bank refused to accept check within twenty-four hour period.

Under Negotiable Instruments Law 1899, a drawee bank has 24 hours in which to accept or reject checks; so, where defendant drawee bank received a check after the usual clearing hours, and on the same day an employee placed the check on a pointed file and drew and mailed Chicago draft to the corresponding bank, but in less than 24 hours the drawee bank learned that the account of the maker was insufficient to satisfy the check, *held* that, where the drawee bank was able to prevent the draft from being delivered, there was no acceptance. (*Post, pp.* 233-237.)

Acts cited and construed: Acts 1899, ch. 94.

Cases cited and approved: Bank v. Bank, 127 Tenn., 205; Luke v. Bank of America, 42 Tenn., 397; Canterbury v. Bank of Sparta, 91 Wis., 53; Security Nat. Bank v. Old Nat. Bank, 241 Fed., 9; Brevard v. Neely, 34 Tenn., 164; Ex parte Cote, L. R., 9 Ch., 27.

2. **BILLS AND NOTES.** Deposit in mails of letter containing acceptance of check is not unqualified acceptance, if acceptor may procure return of letter.

Since Post Office Regulations 1913, section 552, 553, allow the writer or sender of a letter to obtain return of same when duly identified, a drawee bank, which deposited in the mails a letter containing a draft issued in acceptance of check, did not accept the check where, within the 24 hours' time allowed for accepance, it reconsidered its action, and by appealing to the postal authorities procured return of the letter; the change in the postal regulations having altered the old rule that deposit in the mails was a delivery. (*Post, pp.* 233-237.)

FROM WARREN.

Appeal from the Chancery Court of Warren County.—
HON. T. L. STEWART, Judge.

JOHN L. WILLIS, for appellant.

CAMPBELL & DAVIDSON, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

On June 10, 1917, Montgomery & Bouldin bought from
the Harbin Produce Company the stock and business
of the latter concern at McMinnville, Tenn. In payment
Montgomery & Bouldin gave their check for $1,285,
drawn on the First National Bank of McMinnville. On
the next day, June 11, 1917, the Harbin Produce Com-
pany deposited this check in the Traders' National
Bank at Tullahoma, Tenn., requesting of that bank that
the check be sent direct to McMinnville for collection.
The check was sent direct, and reached the First Nation-
al Bank of McMinnville on the same day. The check
arrived after the usual clearing hours, and it was not
charged on that day to the account of Montgomery &
Bouldin. No entry respecting the check in the nature
of a charge to the drawers was made on the books of
the bank. Some employee of the bank, however, on
the afternoon upon which the check came in, placed it
on a pointed file and drew to the order of the Traders'
National Bank the First National Bank's draft upon the
latter's correspondent at Chicago for $1,285. This draft

on Chicago was put in an envelope addressed to the Traders' National Bank at Tullahoma and placed in the mail on the same evening.

A few days previously Montgomery & Bouldin had deposited to their credit in the First National Bank of McMinnville certain checks drawn in their favor on out-of-town banks by this same Harbin Produce Company. On the evening of June 11th, or on the morning of June 12th, after the First National Bank of McMinnville had mailed the draft on Chicago to the Traders' National Bank of Tullahoma, the First National Bank of McMinnville learned that the Harbin Produce Company's checks previously credited to the account of Montgomery & Bouldin as aforesaid had been protested. As a result of this the account of Montgomery & Bouldin at the First National Bank would show a considerable overdraft.

The First National Bank of McMinnville then called up the Traders' National Bank of Tullahoma over the telephone, and asked that the Chicago draft remitted on the day before be returned when it reached Tullahoma, but received no satisfactory reply.

The McMinnville Bank, the defendant, then took the matter up with the post office at McMinnville, and had its letter to the Tullahoma Bank, the complainant, intercepted in the mail and returned, so that the Chicago draft never in fact reached the complainant. The $1,285 check was returned to it.

The Harbin Produce Company failed in a few days thereafter. Other facts appear upon which the complainant relies to establish fraud and collusion between

the Harbin Produce Company and the complainant; but these need not be noticed, since the decision of the case will not turn upon the question of any fraudulent practice upon the defendant bank.

Upon this state of facts the chancellor held the defendant bank liable to the complainant bank in the sum of $1,285, the amount of the Montgomery & Bouldin check, from which decree the defendant has appealed to this court.

This case is similar to that of *Bank* v. *Bank*, 127 Tenn., 205, 154 S. W., 965, and is controlled by the latter case, except in one feature.

In *Bank* v. *Bank*, supra, certain checks drawn on a Sparta Bank were deposited in a Murfreesboro Bank and sent to the drawee bank for payment. The checks reached the Sparta Bank in the afternoon, and were stamped "Paid" and placed on a file or hook for cancellation. At the time the checks reached the Sparta Bank the drawer had not sufficient funds to meet them. The drawer was frequently making deposits, and it was assumed that a deposit would be made during the afternoon or the next morning sufficient to make the checks good. No such deposit having been made, on the next day the Sparta Bank took the checks off of the cancellation hook, erased the "Paid" stamp, protested them, and returned them to the forwarding bank. No entry respecting these checks was made on the books of the Sparta Bank.

Suit was brought by the Murfreeboro Bank against the Sparta Bank to recover the amount of these checks, on the theory that by the course of conduct above stated

the Sparta Bank had accepted the checks for payment and was liable therefor. This contention was denied by this court and the suit dismissed.

The court quoted the definition of acceptance from the Negotiable Instrument Law (chapter 94 of the Acts of 1899), likened checks to bills of enchange, and held that under such circumstances the drawee bank had 24 hours in which to accept or reject the checks, and said:

"We hold there can be no acceptance upon the part of the drawee, receiving remittances from a distance, and acting in the dual capacity of collecting agent of the holder and as agent of the drawer to pay, until and unless the transaction is completed by a delivery to the remitting bank in due course, or notification to some one entitled to be notified." *Bank* v. *Bank,* supra.

The court had previously in the opinion stated that acceptance in the Negotiable Instrument Law "means an acceptance completed by delivery or notification," and had recognized the fact that delivery might be made by a proper entry on the books of the drawee bank. The delivery referred to was, of course, delivery of the proceeds of the checks; the checks having been sent for payment, and not for certification.

From a consideration of *Bank* v. *Bank,* supra, it appears that none of the things done by the defendant bank in the case before us render it liable to the complainant, unless it be the drawing and mailing to the complainant of defendant's draft on Chicago. The complainant insists that by mailing this draft the

defendant completed acceptance or payment of the Montgomery & Bouldin check, and was thereafter precluded from denying responsibility on this account. Numerous authorities are cited for this position by the complainant, among them *Kirkman and Luke* v. *Bank of America,* 2 Cold., 397 *Canterbury* v. *Bank of Sparta,* 91 Wis., 53, 64 N. W., 311, 30 L. R. A., 845, 51 Am. St. Rep., 870; *Security National Bank* v. *Old National Bank,* 241 Fed., 9, 154 C. C. A., 1; *Chapman* v. *Mills et al.* (D. C.), 241 Fed., 717.

These cases, in so far as they deal with similar circumstances, proceed on the theory that a delivery is completed when the subject of delivery is posted in the mail.

The test of delivery, as noted in our cases, is the power of the grantor of a deed or maker of a note to recall the same. Has he parted with dominion and control over it? If so, there has been a delivery. *Brevard* v. *Neely,* 2 Sneed, 164; *Kirkman* v. *Bank,* supra. The same test is recognized in the cases from other jurisdictions just above referred to.

Heretofore it has been assumed that when a letter was posted it was beyond the control of the sender, and became the property of the addressee as soon as put in the mail. 13 C. J., 302. We think all the cases relied on by the complainant are based on this supposition.

If a letter, when posted, can be regarded as beyond the control of the sender, then it may well be concluded that delivery of its contents to the addressee has been perfected.

By the United States Post Office Regulations (1913) sections 552, 553, a change has been made as to rights of the parties. The writter or sender may now apply for a letter, which is put in the mail, and when it is properly identified, the postmaster must return it to him, or telegraph to the office of the addressee, whose postmaster must return it to the post office where mailed, if it has not been delivered. 13 C. J., 302.

The author of the article on Contracts in Corpus Juris in this connection says:

"The question, then, will arise whether a change in the regulations of the post office can affect the law that the acceptance is final when the letter is dropped in the post office. It seems that it does." 13 C. J., 303.

As authority for thelast statement, reference is made to *Ex parte Cote,* L. R., 9 Ch., 27.

In *Ex parte Cote,* supra, a banker in Lyons, France indorsed bills of exchange to a merchant in London and mailed them in the post office at Lyons. Before the mail left Lyons, the banker received a telegram which induced him to undertake to recover the bills of exchange from the mail. Under the postal regulations of France, the sender of a letter was entitled to recover it from the mail, if he made due application and complied with certain formalies, before the letter left the office at which it was posted. The Lyons banker undertook to comply with these formalities and the letter was set aside for him. As a matter of fact he did not regain possession of the bills of exchange by reason of some mistake, and later, in a suit respecting the bills of exchange, which had been forwarded, the question

arose as to whether there was a delivery thereof to the addressee of the letter. It was contended that such a delivery was effected by the posting of the letter at Lyons. The English Court of Appeal in Chancery held that there was no delivery, MELLISH, L. J., said:

"In order to make the property in the bills pass, it is not sufficient to indorse them; they must be delivered to the indorsee, or to the agent of the indorsee. If the indorser delivers them to his own agent, he can recover them; if to the agent of the indorsee, he cannot recover them.

"The question therefore arises: Of which party the post office is the agent. In this country, where the sender of a letter cannot get it returned after it has been posted, if the indorsee of a bill authorizes the indorser to send the bill through the post office, the bill as soon as it is posted becomes the property of the indorsee. But according to the regulations of the French post office a person who posts a letter may get it back on complying with certain forms at any time before the letter has left the town where it is posted. I am inclined to think that the effect of that rule is that the post office is the agent of the sender of the letter until it leaves the town, and that the indorsement of the bills contained in it is not complete till the letter is dispatched from the town."

This authority seems to us well reasoned, and, extending it slightly, it covers the case before us. If delivery is not complete until one had lost control of the subject-matter of the delivery, then it was not completed here, since, under the postal regulations, the defendant

Traders' Nat. Bank v. First Nat. Bank.

bank was entitled to reclaim this letter from the mail before it reached the complainant. We may also, as did the Englich court, regard the post office as the agent of the sender, and under our postal regulations, and the facts of this case, until the letter was delivered to the addressee.

In ordinary cases we will adhere to the old rule that the mailing of a letter amounts to a delivery of its contents to the person to whom it is addressed. This, however, is subject to the power of the person sending the letter to recover it from the mails, under the Postal Regulations of 1913. Such a delivery is therefore subject to be defeated by the proper exercise of such power.

For the reasons stated, we are of opinion that the complainant is not entitled to recover herein, and the decree of the chancellor will be reversed, and this bill dismissed.