MILLER et al. v. PROCTOR.—145 S. W. (2d) 807.

Middle Section. May 25, 1940.

Petition for Certiorari Denied by Supreme Court, December 21, 1940.

Russell Wright, of Hartsville, Leighton Ewell, of Manchester, and Brickell & Johnston and Geo. P. Cooper, all of Huntsville, Ala., for appellants.

Roy L. Mitchell, of Tullahoma, and W. F. Esslinger, of Huntsville, Ala., for appellee.

FELTS, J.  This is a bill by the heirs of Virginia K. Hall, deceased, to set aside a deed by which she gave her nurse, Eva M. Proctor, a farm of about 200 acres in Coffee County.  The grounds of attack upon the deed were that it had been obtained by fraud and undue influence, and that it had never been delivered.

The chancellor, hearing the cause upon the bill, the answer and proof by depositions, upheld the deed and dismissed the bill.  Complainants appealed and insist that the chancellor should have adjudged the deed void upon both of these grounds and decreed the land to them.

Virginia K. Hall died at her residence in Coffee County, Tennessee, on March 25, 1937.  At the time of her death she was about sixty-two years of age.  She had never been married, her father and mother had predeceased her, and her nearest relatives were her first and second cousins, who are descendants of brothers and sisters of her father and brothers and sisters of her mother.  Some of these collateral kindred are not parties to this suit; but no question as to this was made below or here.

She had lived on the farm here involved continuously since 1920. Prior to that time she had lived in New Market, Alabama, where she was born and reared.  Her father seems to have been a man of wealth and to have left her considerable property.  She attended Ward Seminary in Nashville, was well educated and was a person of refinement and culture.  As a child she was frail and for the last twenty-five or thirty years of her life she was practically an invalid.  The estate she left seems to be of a value of about $80,000, realty of a value of about $35,000 and the balance in personalty.  All the realty except the Coffee County farm is located in Alabama.  The proof does not show the value of this farm, but it is probably worth about $15,000.

Its cost in 1920 was about $7,000 and the residence later erected upon it cost something over $7,000.

Eva M. Proctor was no kin to Virginia K. Hall. She had been reared in Wisconsin and was working as a nurse in the Madison Sanitarium, located near Nashville, when she first met Virginia K. Hall as a patient at the sanitarium. This was about 1910 or 1911, and about 1914 or 1915 she was employed by Virginia K. Hall as a nurse and continued in this employment until Miss Hall's death. She stated she was unable to recall what her compensation was for most of the years of her service, but that during the last few years of it she was paid all her expenses and $20 per month. She lived in the home of Miss Hall and accompanied her wherever she went. Miss Hall visited many sanitariums and spent much of her time in them. Among the sanitariums in which she was treated were Madison Sanitarium, Dr. Haywood's Sanitarium near Chattanooga, Fountain Head Health Retreat in Sumner County, Tennessee, Dr. Werrick's Hospital, Elgin, Illinois, the Hillsdale Sanitarium, Hillsdale, Illinois, and many others. Miss Proctor nursed her at home and also at the various sanitariums where she was treated. Dr. Haywood described Miss Hall's condition thus: ''First, Virginia K. Hall was of very frail constitution and physique; all of her bodily functions were what we call low plane—operate under low plane. There was a lack of vitality, of energy, marked weakness, malaise, easily fatigued; she was anemic, blood pressure low, and subject to gastro intestinal disturbances, slow digestion, and finally chronic colitis.''

Miss Proctor was not only Miss Hall's nurse but was also her trusted agent to carry out her instructions for handling her business affairs. Miss Proctor often went to see Miss Hall's bankers and consulted them for business advice and told them of Miss Hall's wishes about her banking and investments. Miss Hall had a safe, locked by a combination, in her residence on the Coffee County farm, in which she kept notes, real estate mortgages, bonds and other valuable papers. She kept a box in the name of Miss Proctor at the First National Bank of Tullahoma in which the combination of this safe was kept. Miss Proctor was also entrusted with carrying out her instructions as to the management of her farm, making arrangements for renting the farm, giving instructions to employees and having general supervision of the farm under Miss Hall's instructions. Tenants and employees hardly ever saw Miss Hall, but dealt with her through Miss Proctor as her agent. Her physical condition was such that she rarely ever received any visitors or carried on any conversations with her neighbors or employees. In short, she lived a ''recluse'' and was wholly dependent on Miss Proctor not only to nurse her but to look after her affairs, or as one of Miss Proctor's witnesses put it, ''she simply couldn't have lived if it had not been for Miss Proctor;'' ''she simply couldn't get along without her.''

As stated, Miss Proctor went to live with Miss Hall about 1915, when she was living at her ancestral home in New Market, Alabama. She continued to live there until about 1920, when she sold her home, left kin, friends and lifetime acquaintances, and retired to the Coffee County farm, living in the farm house with another family, Mr. and Mrs. J. B. Myers, Mrs. Myers having been a nurse at Madison Sanitarium and a friend of Miss Proctor. Miss Proctor seems to have induced Miss Hall to do this. She wrote Mr. J. B. Myers, who was working at Muscle Shoals, about buying a farm near Tullahoma. He agreed to meet her there and look over the farm. He and Miss Proctor met in Tullahoma, went out and looked at the farm, talked with the owner, and agreed that day to buy the farm, Myers agreeing to take a half interest and Miss Proctor agreeing that Miss Hall would buy the other half interest in the farm. Later the papers were prepared and the purchase was consummated. Mr. and Mrs. Myers moved into the house on the farm and in a month or so Miss Hall and Miss Proctor moved in with them. This was in the spring of 1920. In the fall of 1920 the other tenant house on the place was repaired and Mr. and Mrs. Myers moved into it. Myers continued to live on the place for about five years. During this time he hardly ever saw Miss Hall and practically all his dealings with her were through Miss Proctor. He sold his half interest in the farm to Miss Hall, carrying on the negotiations through Miss Proctor, but when the deed was brought to him to execute it was made to Mr. Charles Bray, an employee on the farm, an acquaintance of Miss Proctor from Wisconsin. After staying there for a while Bray left and later transferred his half interest in the farm to Miss Hall. All his instructions for operating the farm were given by Miss Proctor, and the negotiations resulting in the transfer of the half interest to Miss Hall were carried on by Miss Proctor on behalf of Miss Hall.

On May 26, 1922, while Miss Hall and Myers were equal owners of this farm, and while she was at the Hillsdale Sanitarium, Hillsdale, Illinois, she made a will giving "my friend and nurse, Eva M. Proctor" "my farm in Coffee County, Tennessee," $10,000 in money, and the income for life from all the residue of her estate after paying certain specific bequests amounting in all to $11,000. Considering the $10,000 bequest, the Coffee County farm valued at $15,000, and the life income on the residue based on Miss Proctor's expectancy (she being forty-seven years of age at the time of Miss Hall's death), it would appear that the total value of the property given her by the will would amount to about $50,000 or nearly two-thirds of the whole estate. This will recited that Miss Hall was a resident of Madison County, Alabama, and it appears that Miss Proctor has offered it for probate in common form in Alabama. And it is stipulated that the will is being contested in Alabama by Miss Hall's relatives. It also appears that after offering the will for probate and the appointment

of the administrator with the will annexed in Alabama, Miss Proctor brought suit against him claiming all of the personal estate either by gift or under the deed here involved. She was not able to state clearly the basis of this claim. The will of Miss Hall does not appear to have been recorded or offered for probate in Tennessee.

Miss Proctor says she knew nothing about the execution of this will except that Miss Hall told her, while they were at Hillsdale, that she had made a will. She does not say when she first learned the contents of the will. But it does appear that, while Myers still had half interest in the farm and before he moved off in 1925, she stated to Mrs. Roulett, who lived on an adjoining farm, that Miss Hall was going to give her the place and she wanted all of it and wanted to get rid of Myers. She also told Mrs. Roulett about 1930 that Miss Hall had made her a deed to the place, and that ''the lawyers asked is there a will, and she said 'yes, but wills can be broken,' '' or Miss Hall said ''yes, but wills can be broken.'' Miss Proctor did not deny this conversation.

Miss Hall signed and acknowledged the deed in controversy on February 26, 1930, before Eldon Thoma, a notary public and vice-president and cashier of the First National Bank of Tullahoma. He identified her signature to the deed, his signature to the acknowledgment, and his writing dating the deed and the acknowledgment; but he had no independent recollection of the occurrence. Asked in whose possession the deed was when he first saw it, he replied: ''Well, I don't remember. I presume it was Miss Hall brought that deed.'' The original of the deed is sent up. It was written in typewriting. It appears to have been written in 1928, with the day and month left blank. Mr. Thoma dated the deed February 26, 1930, writing ''30'' over ''28.'' The consideration stated in the deed was $1 and love and affection. By it Miss Hall conveyed the farm, her personal belongings in the residence, and her automobile to Miss Proctor. The deed contained this reservation: ''But I retain during my natural life the custody, control, occupancy, and use of all the lands, and personal property herein conveyed.''

This deed was sealed in a large envelope, which is sent up, and left with the First National Bank of Tullahoma, with these instructions for delivery of the deed written on the outside of the envelope and signed by Miss Hall:

''First National Bank of Tullahoma,

''Tullahoma, Tenn.

''This envelope and its enclosure to be delivered to or as requested by myself, or to Miss Eva M. Proctor, at the close of my earthly journey.

''Virginia K. Hall

''March 3, 1930.''

Mr. S. S. Blackman, president of this bank, with whom this envelope was left, could not recall the circumstances, but knew the envelope

had been kept there for several years and was still there when Miss Hall died on March 25, 1937. After her death and before her burial (Saturday, March 27) Miss Proctor sent a messenger to the bank and the envelope was sent to her or directly to the county register at Manchester by the bank. The deed was noted for registration at 9:45 A. M. Monday, March 29, 1937.

In her answer Miss Proctor alleged that Virginia K. Hall sealed the deed in this envelope, left it with the bank to be delivered according to the written instructions, on the envelope above quoted, and that the bank delivered to her the envelope after Miss Hall's death, and when she "opened said envelope it contained the deed," which she caused to be recorded.

However, in her deposition she testified to an entirely contrary state of facts, which was that the deed was not delivered to her by the bank pursuant to these instructions on the envelope, but had already been delivered to her by Miss Hall in her lifetime, and Miss Proctor herself later put the deed in this envelope, wrote these instructions thereon, had Miss Hall sign them, left it with the bank to keep for her, and after Miss Hall's death she got the deed from the bank and had it recorded.

She did not attempt to give any explanation of the contradiction between her answer and her deposition; and the only explanation she offered for doing a thing so extraordinary as taking a deed which had already been delivered to her and putting it up with the bank with these instructions for its delivery, was that she did not want her relatives to put Miss Hall out of the place in case she died before Miss Hall died. Yet she said she knew the deed reserved to Miss Hall a life estate in the place. After the proof had been taken, she was allowed to amend her answer for the purpose of making it conform to her deposition, however, without any explanation of her shift of position. But the amendment still left in her answer the averments as to her first claim and merely added her new and contradictory one.

The learned chancellor accredited her testimony and found that the deed had been delivered to her by Miss Hall and had later been voluntarily left by Miss Proctor at the bank in the envelope with the above-quoted instructions on it. But we are unable to concur in this finding. Miss Proctor's testimony that the deed had been delivered to her before Miss Hall's death is not corroborated by any other testimony or supported by any circumstance in the record, but is contradicted by her answer and seems to us unreasonable and improbable. For these and other reasons hereinafter mentioned, we think the facts as to the delivery of the deed were as she first averred in her answer.

Recurring to appellants' first insistence, we find no evidence in the record of any specific acts or conduct indicating that Miss Proctor obtained the deed by undue influence or fraud. Apart from

the relation between them, the record affords no explanation of what moved Miss Hall to make the deed or what, if anything, Miss Proctor did to obtain it. Her testimony is that she did not know anything about when it was written or executed; and that the first she knew of it was when Miss Hall handed it to her on February 27, 1930, the day after it was executed. The fact that the deed reserved a life estate for Miss Hall and the fact that it was left at the bank in the envelope with the instructions for its delivery, indicate that so far as Miss Hall herself was concerned no sort of advantage was taken of her; for this reservation and these instructions for delivery fully protected her.

However, we think the evidence does establish that there was a relation of special trust and confidence between Miss Hall and Miss Proctor. Miss Hall was a recluse and practically an invalid. She was wholly dependent on Miss Proctor not only to nurse her but to look after her affairs as her trusted agent. Practically all of her outside contracts were through Miss Proctor as her agent. Speaking of such special relation of trust and confidence, our Supreme Court in Bayliss v. Williams, 46 Tenn. (6 Cold.), 440, 442, said: ''The relation may be of any kind which implies confidence, as trustee and beneficiary, attorney and client, parent and child, guardian and ward, physician and patient, nurse and invalid, confidential friend and adviser, indeed, any relation of confidence between persons which gives one dominion or influence over the other.'' (Citing authorities.)

To the same effect see McClure v. McClure, 86 Tenn., 173, 176, 6 S. W., 44; Bridges v. Agee, 15 Tenn. App., 351, 368; McKnatt v. Mc-Knatt, 10 Del. Ch., 392, 93 A., 367; 2 Pomeroy's Eq. Jur., secs. 956, 963.

The existence of such a relation between two persons does not of course prevent the one who is dependent upon the other from giving him his property; but such relation does raise a presumption of the invalidity of such a gift, and the burden is upon the donee to show by the ''clearest and most satisfactory evidence to be adduced, that at the time the transaction took place, no advantage whatever was taken, either of the confidential relations existing in order to obtain a benefit, or of the weakness and frailty of the party from whom the benefit was received.'' Graves v. White, 63 Tenn. (4 Baxt.), 38, 41. In Pomeroy's Eq. Jur., it is said: ''The transaction is not necessarily voidable, it may be valid; but a presumption of its invalidity arises, which can only be overcome, if at all, by clear evidence of good faith, of full knowledge and of independent consent and action.'' (Citing many cases.) Vol. 2, sec. 957, pp. 2042, 2043.

It is held in many jurisdictions that where a confidential relationship exists the donee must show not only that no undue influence was used and the gift was understandingly and voluntarily made by the donor, but also that he had the benefit of competent

and independent advice of a disinterested third party. See cases cited in annotations, 16 L. R. A. (N. S.), 1088, 15 Ann. Cas., 1033; 24 Am. Jr., 757.

We think the rule announced by the foregoing authorities is applicable not only where the donor himself seeks to impeach the gift but also where his heirs or distributees seek to do so. We think this is especially so where, as here, the donee has already been paid for his services and the gift would disappoint the just claims of the donor's relatives. In the present case Miss Proctor failed to show the circumstances which moved the donor to make the deed or those under which it was executed. She is quoted by one witness as having said that Miss Hall was going to give her the place and that she wanted all of it and wanted to get Myers off the place, and that when the deed was made the lawyers asked whether there was a will and she or Miss Hall said "yes, but wills can be broken." She made no explanation or denial of this matter. We think under the principles above stated a court of equity ought not to allow the deed of gift to stand in the absence of a showing that Miss Proctor did not abuse the confidence and trust reposed in her by Miss Hall and that Miss Hall acted freely of her own consent and upon independent and disinterested advice.

But if we are mistaken in this view of the case, we think the deed is invalid for want of delivery. It is of course essential to the validity of a deed that it be delivered by the grantor to the grantee or to some one for him, with the intention of passing title to him. Kirkman v. Bank, 42 Tenn. (2 Cold.), 397, 402; Davis v. Cross, 82 Tenn., 637, 52 Am. Rep., 177. A deed may be deposited by the grantor with a third person with directions to deliver it to the grantee upon the grantor's death, and such delivery will be good, provided the grantor at the time of depositing it with such third person parted with his dominion, control, or right to reclaim the deed. But such delivery is not effective if the grantor retained the right to repossess the deed, even though he never undertook to exercise such right. Annotation, 52 A. L. R., 1222, 1227, 1240. In Traders' National Bank v. First National Bank, 142 Tenn., 229, 234, 217 S. W., 977, 978, 9 A. L. R., 382, Associate Justice Green, speaking for the court, said: "The test of delivery as noted in our cases, is the power of the grantor of a deed or maker of a note to recall the same. Has he parted with dominion and control over it? If so, there has been a delivery. Brevard v. Neely, 2 Sneed, 164; Kirkman v. Bank, supra. The same test is recognized in the cases from other jurisdictions just above referred to."

To the same effect see Couch v. Hoover, 18 Tenn. App., 523, 536, 79 S. W. (2d), 807. In the case just cited the grantor placed a deed with his attorney to be delivered after his death to the grantee, which was done, and the delivery was held good. But in Davis v.

Cross, supra, the deed contained this, "This deed will be delivered to a friend for safe-keeping, with directions to deliver at such time as I may direct." This was held not a good delivery because the grantor had not parted with dominion over the deed. In the present case we think Miss Hall did not part with her dominion or right to recall the deed. The instructions by which she placed the deed with the bank were: "This envelope and its contents to be delivered to or as requested by myself, or to Miss Eva M. Proctor, at the close of my earthly journey."

Clearly she had the right to control the delivery as long as she lived. The bank was her agent in holding the deed and not Miss Proctor's agent. It would have been the bank's duty to deliver it to her at any time she called for it. Her death terminated the bank's agency for her and the delivery of the deed by the bank after her death to Miss Proctor was ineffective under the authorities above cited. See, also, 16 Am. Jur., 520.

We have already referred to the testimony of Miss Proctor that the deed was delivered to her by Miss Hall the day after it was executed and that Miss Proctor herself on March 3, 1930, wrote the instructions on the envelope for delivery of the deed, had Miss Hall sign them, and left the envelope with the bank. As above stated, this testimony is just the contrary of the claim set up in her answer. She testified that she and Miss Hall went to Chattanooga on February 27, 1930, to stay over the week-end and that she left the deed with Mr. Strong who was in charge of the real estate department of the First National Bank at Chattanooga. She introduced Mr. Strong who testified that she did leave a deed with him but he was unable to identify the deed and seemed able to recall very little about it. His testimony is consistent with the idea that the deed was first placed with the First National Bank of Chattanooga in the envelope to be held by that bank and delivered according to the instructions written on the envelope, and was later taken from that bank upon its failure in 1932, and placed with the First National Bank of Tullahoma. The envelope was stationery of the Chattanooga bank and the instructions were first addressed to the "First National Bank of Chattanooga, Chattanooga, Tenn." and "Chattanooga" in both instances was stricken out and "Tullahoma" was written in with pen.

But assuming that Miss Proctor had possession of the deed and left it with Mr. Strong, it does not follow that delivery had been made to her. She was the trusted agent of Miss Hall and could have had possession of the deed for other purposes than that of delivery to her. Tanksley v. Tanksley, 145 Tenn., 468, 239 S. W., 766. Her unsupported testimony that the deed had been delivered to her is insufficient to establish such delivery. Atchley v. Rimmer, 148 Tenn., 303, 255 S. W., 366, 30 A. L. R., 1481. This is especially true in view of the written instructions on the envelope itself for the delivery of

the deed and in view of the unreasonable explanation by which she undertakes to account for such instructions being placed on the envelope. For these reasons we think the deed was never delivered and is invalid on that account.

However, in the plight of the record before us we cannot adjudge that appellants are entitled to the land in this suit. The record shows that this land was devised to defendant in the will of Miss Hall, which is being contested in Alabama. Some of our cases declare that a will has no force as a muniment of title until it has been probated. Zuccarello v. Erwin, 2 Tenn. App., 491; Winters v. American Trust Co., 158 Tenn., 479, 491, 14 S. W. (2d), 740. Also the institution of a contest of a will suspends the effect of a probate in common form and suspends all rights dependent upon the will. Sizer's Pritchard Law of Wills and Executors, sec. 361. In this case the parties apparently proceeded upon the idea that the validity of the will was not involved in the present suit, because the will was being contested in Alabama and could be contested in Tennessee, when offered for probate here, in so far as it undertakes to dispose of the land here involved. Code, sec. 8118.

It results that the decree of the chancellor is reversed and a decree will be entered in this court adjudging the deed invalid, but without prejudice to defendant's claim to the land under the will or appellants' right to contest such will if offered for probate in Tennessee. The defendant, Miss Eva M. Proctor, will pay all the costs of this cause including the cost of this appeal.

Faw, P. J., and Crownover, J., concur.